UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DARRIN M. GASPER,

                                        Plaintiff,

v.

S. SANCHEZ; M. STOUT; A. HERNANDEZ; R. WALKER; DANIEL PARAMO,

                                        Defendants.

Case No.: 3:15-cv-01118-BEN-JMA

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

**[Docket No. 28]**

Darrin Gasper ("Plaintiff"), is a prisoner currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD") located in San Diego, California, and is proceeding pro se in this civil action pursuant to 42 U.S.C. § 1983. Currently pending before this Court is Defendants Motion for Summary Judgment for Failure to Exhaust Administrative Remedies pursuant to Federal Rule of Civil Procedure 56. (Docket No. 28.)

## I.    Procedural History

On December 24, 2015, this Court granted Plaintiff's Motion to Proceed *In Forma Pauperis* ("IFP") and found that Plaintiff's First Amended Complaint ("FAC") survived the initial sua sponte screening process. (Docket No. 22.) The Court directed the United States Marshal Service to effect service of Plaintiff's FAC on the named Defendants. (*Id.*

at 2, 3.)  On February 1, 2016, Defendants filed their Motion for Summary Judgment[1] pursuant to Rule 56 based on Plaintiff's failure to properly exhaust available administrative remedies prior to filing suit, as is required by 42 U.S.C. § 1997e(a). (Docket No. 28.)  On February 25, 2016, Plaintiff filed his Opposition to Defendants' Motion and on March 28, 2016, Defendants' filed their Reply.  (Docket Nos. 30, 33.)

After careful review of Defendants' Motion, as well as all evidence submitted both by Defendants in support of summary judgment and Plaintiff in response, the Court GRANTS Defendants' Motion for Summary Judgment based on Plaintiff's failure to exhaust his administrative remedies.

## II.  Plaintiff's Factual Allegations

Plaintiff claims that he suffers from "life-long bilateral pes planus (extremely flat feet)" and he requires the use of a wheelchair in order to "ambulate."  (FAC at 4.)  In addition, he alleges that he requires the use of "corrective leg braces for any mobility." (*Id.*)  Initially, Plaintiff was given these leg braces by the Veteran's Administration ("VA") but he claims that these braces were "immediately removed and lost" by the California Department of Corrections and Rehabilitation ("CDCR").  As a result of having lost these braces, Plaintiff claims that his condition has "deteriorated to the point of having to use his [wheelchair] constantly."  (*Id.*)

Plaintiff, who is currently housed at RJD, was given a cell assignment in "housing Unit B-9" which does not "contain any ADA assistance fixtures."  (*Id.* at 4-5.)  In addition, due to his "A-2-B" placement, he only is permitted two showers per week and only five minutes in duration.  (*Id.* at 5.)  Plaintiff claims that this is even less than the amount of showers that an inmate in "punitive segregation" receive.  (*Id.*)  Plaintiff

---

[1] Defendants provided a *Rand* notice to Plaintiff when they filed their Motion for Summary Judgment.  (Docket No. 28-2.)  *See Rand v. Rowland*, 154 F.3d 952, 960 (9th Cir. 1998) (holding that a district court's obligation to "advise prisoner pro se litigants of Rule 56 requirements may be met by the summary judgment movant providing the prisoner with notice.")

claims that he is unable to "maintain proper hygiene," he is unable to obtain mobility without a wheelchair and "cannot exercise." (*Id.*)  Plaintiff claims Defendants "refuse to return his medications or provide corrective leg braces to him." (*Id.*)

After filing numerous grievances, Plaintiff was able to change his custody status to "A" on January 15, 2014 but this was later "vindictively and arbitrarily rechanged back to A-2-B" on February 4, 2015. (*Id.* at 6-7.)  Plaintiff claims that this was changed by Defendant Sanchez "for no articulable reasons other than just because she could." (*Id.* at 7.)  Plaintiff claims that his status was changed to "medically unassigned," along with ten other inmates, which caused them to lose their "A-1-A" status. (*Id.*)  Plaintiff argues that he should be designated medically permanently disabled. (*Id.*)  If he were given this status, he would receive a "minimum of 48 hours per week" of "out of cell time and yard time." (*Id.* at 7-8.)  As an "A-2-B disabled prisoner," he only receives five hours of "out of cell time" per week. (*Id.* at 8.)

On September 21, 2015, Plaintiff claims Defendants Sanchez, Hernandez and Paramo "removed more than half of Plaintiff's dayroom access" in "retaliation as a direct result of this lawsuit." (*Id.*)  In addition, Plaintiff alleges that he lost seven additional hours of "out of cell" time per week. (*Id.*)  In addition, while he does receive some yard time, Plaintiff claims that the "yard areas of B-yard have absolutely" no accommodations for inmates who use wheelchairs. (*Id.* at 9.)  Moreover, there is no law library on "B-yard," there are "pot-holes" in the track area and the "gymnasium facility is falling apart." (*Id.*)

Plaintiff also claims that Defendants have placed Plaintiff, along with other inmates assisting Plaintiff, in "Administrative Segregation confinement without due process of law, notice or opportunity to respond." (*Id.* at 10.)

Plaintiff seeks injunctive relief in the form of an order "preventing Defendants from continuing their discriminatory A-2-B/A-1-A status policy," as well as compensatory and punitive damages in the amount of twenty dollars per day for every day in A-2-B status. (*Id.* at 13.)

## III.   Defendants' Motion

Defendants seek summary judgment on the ground that Plaintiff "did not exhaust administrative remedies for any claims in the First Amended Complaint."  (*See* Defs.' Mem. of P&As in Supp. of Mot. for Summ. J. (Docket No. 28) ("Defs.' P&As") at 5.)

### A.   Legal Standards

#### 1.   Statutory Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).

 "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]"  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,'[ ]-rules that are defined not by the PLRA, but by the prison grievance process itself."  *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88); s*ee also Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'"') (quoting *Jones*, 549 U.S. at 218).  The Ninth Circuit has consistently held, however, "that the PLRA requires only that a prisoner exhaust available remedies, and that a failure to exhaust a remedy that is effectively unavailable does not bar a claim from being heard in federal court."  *McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015) (citing *Nunez v. Duncan*, 591 F.3d 1217, 1225-26 (9th Cir. 2010); *Sapp v. Kimbrell*, 623 F.3d 813 823 (9th Cir. 2010); *Albino v. Baca*, 747 F.3d 1162, 1177 (9th Cir. 2014) (en banc), *cert. denied sub nom. Scott v. Albino*, 135 S. Ct. 403 (2014)).

4

"To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Albino*, 747 F.3d at 1171 (quoting *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005)).

Because the failure to exhaust is an affirmative defense, Defendants bear the burden of raising it and proving its absence. *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, Defendants must produce evidence proving the Plaintiff's failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable Plaintiff, shows he failed to exhaust. *Id.*

## 2.  Rule 56 Summary Judgment

Any party may move for summary judgment, and the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino*, 747 F.3d at 1166; *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether a fact is disputed or undisputed, must be supported by: (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

When defendants seek summary judgment based on a plaintiff's failure to exhaust, they "must first prove that there was an available administrative remedy and that [plaintiff] did not exhaust that available remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172). If they do, the burden of

production then shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191; *see also McBride*, 807 F.3d at 984 (citing "certain limited circumstances where the intervening actions or conduct by prison officials [may] render the inmate grievance procedure unavailable.").

"If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied." *Id.*

### 3.    CDCR's Exhaustion Requirements

A California prisoner may appeal "any policy, decision, action, condition, or omission by the department or its staff that [he] can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare." CAL CODE REGS., tit. 15 § 3084.1(a).  Since January 28, 2011, and during the times alleged in Plaintiff's Complaint, Title 15 of the California Code of Regulations requires three formal levels of appeal review.  Thus, in order to properly exhaust, a California prisoner must, within 30 calendar days of the decision or action being appealed, or "upon first having knowledge of the action or decision being appealed," CAL. CODE REGS., tit. 15 § 3084.8(b), "use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested." *Id.* § 3084.2(a).  The CDCR Form 602 "shall be submitted to the appeals coordinator at the institution."  *Id.* § 3084.2(c), § 3084.7(a).  If the first level CDCR Form 602 appeal is "denied or not otherwise resolved to the appellant's satisfaction at the first level," *id.* § 3084.7(b), the prisoner must "within 30 calendar days . . . upon receiving [the] unsatisfactory departmental response," *id.* § 3084.8(b)(3), seek a second level of administrative review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent." *Id.* § 3084.7(b), (d)(2).  "The third

level is for review of appeals not resolved at the second level." *Id.* § 3084.7(c). "The third level review constitutes the decision of the Secretary of the CDCR on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies," *id.* § 3084.7(d)(3), "unless otherwise stated." *Id.* § 3084.1(b); *see also* CDCR OP. MAN. § 541100.13 ("Because the appeal process provides for a systematic review of inmate and parolee grievances and is intended to afford a remedy at each level of review, administrative remedies shall not be considered exhausted until each required level of review has been completed.").

Section 3084.8 further provides that the CDCR's "[t]ime limits for reviewing appeals shall commence upon the date of receipt of the appeal form by the appeals coordinator." § 3084.8(a). With some exceptions, "[a]ll appeals shall be responded to and returned to the inmate or parolee by staff," *id.* § 3084.8(c), and first and second level responses are due "within 30 working days from date of receipt by the appeals coordinator." *Id.* § 3084.8(c)(1), (2). Third level responses are due "within 60 working days from the date of receipt by the third level Appeals Chief." *Id.* § 3084.8(c) (3). "'Working day' means a calendar day excluding Saturdays, Sundays, and official state holidays." CAL. CODE REGS., tit. 15 § 4003(j)(2). "Except for the third level, if an exceptional delay prevents completion of the review within specified time limits, the appellant, within the time limits provided in subsection 3084.8(c), shall be provided an explanation of the reasons for the delay and the estimated completion date." § 3084.9(e).

## B.   Plaintiff's Claims

In this matter, as stated above, Plaintiff is proceeding *pro se* and therefore, this Court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (*citing Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). Applying this principal, it did appear that Plaintiff was alleging an Eighth Amendment claim, along with a claim under the Americans with

7

Disabilities Act ("ADA").  However, Plaintiff claims in his Opposition that he "makes only 2 claims for relief in this matter."  (*See* Pl.'s Opp'n to Defs.' Mot. for Summ. J. (Docket No. 30) ("Pl.'s Opp'n") at 2.)  Specifically, Plaintiff clarifies that he is only bringing an equal protection claim and a retaliation claim.  (*Id.*)  Therefore, the Court will consider whether Plaintiff properly exhausted his administrative remedies as to those two claims only.

### B.    Plaintiff's Record of Grievances

In support of their argument that Plaintiff failed to properly exhaust his claims in this action, Defendants supply the declaration of M. Voong, the Chief of the Office of Appeals in Sacramento, California, along with the declaration of B. Self, Appeals Coordinator for RJD.[2]  (Voong Decl., Docket No. 28-4; Self Decl., Docket No. 28-3.)

Defendants set forth a history of Plaintiff's attempts to file grievances and claim that because he has "filed several Reasonable Modification or Accommodation Requests," this "shows that administrative remedies were available to him."  (Defs.' P&As at 14.)  In response, Plaintiff concedes that Defendants are "correct in their assertion that plaintiff has not exhausted administrative remedies upon his retaliation claim."  (Pl.'s Opp'n at 4.)  Thus, Plaintiff would only be able to prevail in proceeding with his retaliation claim if he can produce evidence the grievance procedure was "unavailable."  Plaintiff argues that when "reviewing Title 15 CCR for how to make an ADA appeal on his retaliation claim, he could no longer find any information on who, what, when, how or where to file an ADA appeal for the modification of his A-2-B situation or the September 21 retaliation."  (*Id.*)

---

[2] Defendants also supply the declarations of D. Van Buren, Health Care Appeals Coordinator at RJD, and R. Robinson, Chief of the Inmate Correspondence and Appeals Branch which oversees the "medical, dental and mental health care appeals for adult inmates" within the CDCR.  (Van Buren Decl., Docket No. 28-5; Robinson Decl., Docket No. 28-6, at 1.)  However, due to Plaintiff's clarification that he is not alleging a medical care claim, the Court need not consider these declarations as they are no longer relevant to the issues raised in this matter.

In support of this argument by Plaintiff that his administrative remedies were not "available," he claims that in 2011, "defendants changed the ADA appeal" without any notice to RJD inmates.  (*Id.*)  Plaintiff claims Defendants failed to notify him as to "where to get the ADA 1824 appeal form."  (*Id.* at 6.)

In response to Plaintiff's claims that the process was "unavailable," Defendants demonstrate that Plaintiff filed at least three "Reasonable Modification or Accommodation Requests" in 2012, 2013 and 2015.  (Defs.' Reply (Docket No. 33) at 2; Self Decl., Exs. 1, 2, 3.)  These exhibits demonstrate that Plaintiff knew how to file an ADA 1824 appeal and used CDCR form 1824 on several occasions following the purported rule changes in 2011.  Plaintiff has failed to "come forward with evidence" to show "that there is something in his particular case that made the existing and generally available administrative remedies [that he has used] effectively unavailable to him." *Albino*, 747 F.3d at 1172.

The remaining claim is Plaintiff's allegation that he was discriminated against because of his disability.  Specifically, Plaintiff claims in his FAC that "Defendants discriminated against Plaintiff, a permanently disabled prisoner that has resulted in unequal and cruel punishment of him."  (FAC at 3.)  These allegations are contained in "Count 1."  (*Id.*)  Plaintiff argues that the decision to place him on "A-2-B" status on February 4, 2015 was "arbitrary."  (*Id.* at 7.)

Defendants have supplied the declaration of B. Self and attached to this declaration a copy of "CDCR Form 1824 Reasonable Modification or Accommodation Request," with a Log No. RJD-B-15-923.  (Self Decl., (Docket No. 28-3) at 17, Ex. 3.)  This form is signed by Plaintiff and dated March 7, 2015.  (*Id.*)  Plaintiff does not address this form or make any argument disputing the authenticity of this form in his Opposition.  In it, Plaintiff describes his grievance by stating "just went to annual committee review and had my A-1-A privileges taken away for no reason other than an apparent punishment for being disabled."  (*Id.*)  Plaintiff requested the reinstatement of these privileges.  (*Id.*) This is the claim that Plaintiff raises as "Count 1" in his FAC.  Defendants have supplied

the response that was given to Plaintiff in relation to this grievance.  Self declares that this "request was denied" and Plaintiff "was advised that the response constituted the first-level response and that if he did not agree with the decision, he could proceed to the second level."  (Self Decl. ¶ 6; Ex.3, "Reasonable Accommodation Panel (RAP) Response dated March 24, 2015.)  Self further declares that there is "no record of Plaintiff submitting this request for second-level review."  (Self Decl. ¶ 6.)

Plaintiff does not address this grievance in either his FAC or in his Opposition to Defendants' Motion.  This grievance clearly raises his claim that he is being discriminated against because of his disability, but there is no evidence in the record to demonstrate that he properly exhausted this claim prior to bringing this action.

In order to defeat a properly supported motion seeking summary judgment based on a prisoner's failure to exhaust pursuant to 42 U.S.C. § 1997e(a), Plaintiff must "come forward with evidence showing" either that he has properly exhausted all available administrative remedies before filing suit, or that "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Williams*, 775 F.3d at 1191; *Jones*, 549 U.S. at 218.  Plaintiff does not dispute the validity of this grievance and provides no evidence to contradict any of Defendants' showing of non-exhaustion.

Based on the record before the Court, the Court finds that Defendants have met "their burden of demonstrating a system of available administrative remedies at the initial step of the *Albino* burden-shifting inquiry."  *Williams*, 775 F.3d at 1192.  Defendants have shown that remedies were available to Plaintiff and they have also shown that Plaintiff failed to properly exhaust his administrative remedies.

The *Albino* court held that when the burden of proof shifts to the plaintiff, the plaintiff must show that the "local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."  *Albino*, 747 F.3d at 1172 (citation omitted.) The evidence in the record does not support a finding that his unsubstantiated claims that he was not given notice of the grievance procedure, would render the entire grievance

process at RJD "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.* The record before the Court shows that Plaintiff did attempt to file a grievance relating to his claims of discrimination based on his disability which was denied. However, Defendants have also shown that Plaintiff had the opportunity to appeal the denial of his grievance to the second, and perhaps third and final level of review, but there is no evidence in the record to find that he made such an attempt.

As stated previously, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford*, 548 U.S. at 90. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. *See id.* at 90-93.

Based on the above, the Court finds that Plaintiff has failed to submit evidence sufficient to defeat Defendants' showing that there was an available grievance procedure, Plaintiff was aware of this procedure and Plaintiff failed to follow this procedure. Therefore, the Court finds that Defendants are entitled to summary judgment based on Plaintiff's failure to exhaust his available administrative remedies before filing this action as required by 42 U.S.C. § 1997e.

**III.   Conclusion and Order**

Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment on the grounds that Plaintiff failed to properly exhaust his administrative remedies prior to filing this action as required by 42 U.S.C. § 1997e.

The Clerk of Court shall enter judgment for all the Defendants and close the file.

**IT IS SO ORDERED.**

Dated:  May 11, 2016

Hon. Roger T. Benitez
United States District Judge

3:15-cv-01118-BEN-JMA